**In re Cecile Lolita CARTER, f/d/b/a C. M. Secretarial Services, Debtor.**

**Bankruptcy No. 80 B 01604 M.**

United States Bankruptcy Court, D. Colorado.

June 20, 1980.

Edward I. Cohen, Denver, Colo., for the debtor.

Stanley G. Lipkin, Denver, Colo., for Lois D. Larson.

Joseph A. Kiely, Denver, Colo., for United Bank of Denver.

MEMORANDUM OPINION

JOHN P. MOORE, Bankruptcy Judge.

THIS MATTER arises upon the confirmation of the Debtor's plan. Two creditors have objected to confirmation on the ground that the plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3).

The objections center about the fact that approximately one year and two weeks prior to filing her Chapter 13 petition in this Court, the Debtor, by quit claim deed, transferred to her parents a home in which she had an interest. The creditors claim that the transfer was for the purpose of defrauding creditors, and therefore subject to avoidance under state law. Accordingly, they contend that because confirmation of the plan would forestall suit to set aside the transfer, the proposal of the plan was not made in good faith.

From the sketchy evidence produced at the hearing on confirmation, it appears the Debtor and her parents, as tenants in common, acquired a home in 1971 for $21,000.00. At the time of the purchase, the parents contributed 75 percent of the required down payment of $4,000.00. In addition, they have also made a "significant" number of the subsequent monthly payments due on the property.

On August 29, 1978, the ownership of the home was altered by a deed executed by the Debtor and her parents. Although the deed was not introduced, it purportedly created a "fee" interest in the Debtor with a "life estate" in the parents. Whether this description accurately portrays the state of title after the execution of the deed is not important. It is important, however, that whether the Debtor had a fee simple interest or merely a remainder interest, she treated this property as her own.

Sometime after the consummation of the Larson transaction, the Debtor purportedly sustained severe business losses. Consequently, she was unable to make good on the obligation to Ms. Larson. Thus, in the latter part of December, 1978, Ms. Larson commenced an action for damages against the Debtor in state court.

Approximately four months after Ms. Larson filed suit, the Debtor executed the quit claim deed which forms the basis of the creditors' objection. According to the testimony, the Debtor received only $500.00 in cash for the property even though an appraisal made a month prior valued the property at $84,000.00, and despite a recital in the deed which indicates that consideration was paid in the amount of $6,000.00.

The Debtor states that despite the timing of the transfer, it was not made to defraud her creditors. She also insists the Larson lawsuit did not prompt the transfer. She states that the deed was executed upon the advice of former counsel, and when pressed, she maintained the transfer was to protect her parents' interests in the property should she remarry and die intestate.

Despite the contention of the creditors, I do not believe the real issue here is whether the Debtor's plan has been proposed in good faith. In my opinion, the only way that conclusion can be reached is by inference that the Debtor intended by the filing of her bankruptcy petition to forestall action to set aside the conveyance of her home to her parents. To me, the pivotal issue is whether the Debtor has satisfied her burden of proving the plan provides the holder of unsecured claims as much as they would receive if the Debtor's estate were liquidated under Chapter 7. Such proof is required by 11 U.S.C. § 1325(a)(4).

In approaching this issue we must recognize that the question is not whether the conveyance is voidable under 11 U.S.C. § 548. As presented, the issue is whether a Trustee acting under 11 U.S.C. § 544(b) and § 38–10–117, Colo.Rev.Stat., 1973 [1] could reasonably be expected to succeed in setting aside the transfer between the Debtor and her parents, and recovering the property for the benefit of the Debtor's estate.[2]

---

1. The state fraudulent conveyance statute.

2. Section 13–80–108(1)(a) C.R.S., 1973.

■ Focusing attention upon the subject conveyance and its attendant circumstances, a number of observations can be made which bear on a Trustee's prospects for success. First a conveyance between family members is suspect[3], particularly when the consideration supporting the transfer is inadequate[4].

Here, the Debtor maintains she has divested herself of her interest in her home, but she continues to live there with her children. Moreover, the sufficiency of the consideration is problematical. It is clear from the Debtor's own testimony that the property had an equity value apparently in excess of $65,000.00 at the time of transfer, yet she actually received only $500.00 in exchange. In addition, the deed recites a substantially higher consideration than was actually received by the Debtor.

The discrepancy between the deed recitals and the actual cash received generates an inference of fraudulent intent in my mind. This is particularly true when it is remembered that the transfer occurred shortly after a state court action for damages was commenced against the Debtor. To me, it appears inferable that the recital of a false and inflated consideration in the deed was made for the purpose of creating the illusion of consideration adequate to support the transfer. The inference is so strong that I would reject the Debtor's suggestion that part of the consideration was the assumption of the debt against the property by her parents.

■ Certainly, without the presence of other factors, the assumption of indebtedness can be consideration for a transfer of property.[5] Here, however, the disparity between the deed recitals, the cash actually paid, the amount of the indebtedness against the property, and the size of the equity call the adequacy of the consideration into serious question.

■ At this juncture, the Court is in no position to conclude that the conveyance here constitutes a fraudulent conveyance which must be set aside. The summary proceedings in confirmation are not designed for that kind of determination. All the Court can determine here is that the creditors have made an unrebutted prima facie showing that there is a legitimately justiciable issue which could be pursued by a liquidating trustee. They have further shown such pursuit would likely be successful, and success would result in the enrichment of the Debtor's estate by a sum that would allow full payment of all scheduled unsecured debt.

Because of the provisions of 11 U.S.C. § 1325(a)(4), the risk and burden of nonpersuasion falls on the Debtor. As the plan provides only one dollar to each unsecured creditor, I cannot confirm in light of the evidence. Hence, an order shall enter denying confirmation.

3. *Mann v. Shepard, et al.*, 570 F.2d 247 (8th Cir., 1978); *In re Patrizzo*, 105 F.2d 142 (2d Cir., 1939); *Edwards v. Litch*, 83 Colo. 111, 262 P. 1016 (1927); *Greenlee v. Owens*, 74 Colo. 225, 220 P. 496.

4. 37 Am.Jur.2d, *Fraudulent Conveyances* § 24; *Mann v. Shepard, et al.*, supra.

5. 37 Am.Jur.2d, *Fraudulent Conveyances* § 22.